The argument is 20-1909, Taylor Energy Company v. Department of Interior. Mr. Ludman, whenever you're ready. May it please the Court, Robert Ludman, representing the Department of the Interior. The District Court's order transferring this case to the Court of Federal Claims should be reversed. As I will address after summarizing the background, the Court of Federal Claims here cannot provide an adequate remedy because it is bound by the decision of the Interior Board of Land Appeals, or IVLA. And that decision directly rejected Taylor's claim for reimbursement, the same claim it's seeking review for in this case. Let me ask... Let me ask... Oops, go ahead. Mr. Ludman, I'm sorry. Thank you. Just two preliminary questions. One, does the fact, the way things went down here, do you think that was a function? And it's my understanding that the District Court, the other side did what it did, and the District Court ruled before it had the benefit of what our Court said in the other Taylor case. Do you think that had something to do with it? That's right. The District Court ruling here was before the September decision from this Court, which I think makes the answer even clearer on adequate remedy. Now, let me move on, so I'll get to Judge O'Malley in a moment. But is it your contention that the CFC lacks jurisdiction over Taylor's claim? Or is it that the CFC has jurisdiction, but given this IVLA decision, the CFC was unable to give relief on Taylor's claim? In other words, if we were to proceed in the CFC in its current posture, is your argument that the CFC would have to dismiss on 12B1, or that it would inevitably have to dismiss on 12B6? Well, our argument is it's jurisdictional, and the reason is the adequate remedy prong of APA review has to be read together with the Tucker Act, and the case has to fall on one or the other side of the line. And we think here the answer is, because it's clear that there's no adequate remedy available in the Court of Federal Claims, the case only can be moved forward in the District Court under the APA. And, for example, this Court's decision in suburban mortgage says, when you're sorting out this sort of problem, you should start with adequate remedy. And that is thus part of the jurisdictional line that results. And it also flows from 5 U.S.C. 704 from the APA, which provides for judicial review in District Court if there's no other adequate remedy in another court, and we think that reinforces that the line here is jurisdictional. At the end of the day, there's no practical reason to proceed in the CFC now. It doesn't make sense because the CFC can only do one thing. You can only say, as this Court made clear in the September decision, that the IVLA decision is controlling, and it's very clear if you look at their complaint, Taylor Energy's complaint here, both the complaint they filed in District Court on Appendix Page 13 and also the proposed complaint that they attached to their motion to transfer to Appendix 329, that what they're seeking here is a reversal of the IVLA decision. And that's just something the CFC can't do as a matter of its authority, and so the only way to proceed is in District Court. Counsel, I understand that in the prior action, there was no actual appeal of the IVLA decision, which is, I guess, why the government decided not to argue a jurisdictional point in that earlier decision. What I never understood in the first case is why you didn't argue there that, regardless of either the statute of limitations or the issue with respect to the governing law, why you didn't argue that it doesn't matter, that none of it matters, because the IVLA decisions have binding effect on related lawsuits before the claims court. Why shouldn't that have been the end of the inquiry in that case? Well, in the prior case, the September case, the split between the IVLA decision that occurred before their case and their legal claims was a little, I think, less clear and direct. Their claims were seeking a much broader remedy, ending the agreements, declaring them impossible under Louisiana state law, and that ran into lots of trouble and difficulty beyond simply the IVLA decision that was there. Here we have a perfect fit. They're clearly seeking, the complaint is really clear on this, that they're seeking to reverse, set aside, declare arbitrary and capricious the IVLA decision, and they're seeking the return of the funds that the IVLA decision said, no, it should stay in the lease-specific abandonment account and not be returned to you. And so there's no gap here at all between their claim and the IVLA decision. It's addressing the very same issue, and they're seeking here to undo it. And so that's why I think the adequate remedy point here is dispositive jurisdictionally, but also just if you step back and look at this as a practical matter, there's no point in going forward in the CFC when the only thing that court can do is dismiss, and then maybe they appeal, and then maybe it gets back to district court, and that takes a lot of time and doesn't make any sense. How long was the motion to transfer pending before the district court? I don't recall. It was decided fairly quickly. I don't actually remember for sure, but it was definitely decided before this court's September decision. This appeal picked up before then, and the September decision came out right before we filed our opening brief in this appeal. Okay. And I can double-check that for rebuttal. Okay, thank you. Counsel? Yes. Counsel, Judge Flaker here. I'm puzzled, as we've discussed a little bit, why the government in the earlier case, the September 3rd case, why the government had not argued jurisdiction in that case. It seems to me there clearly was an issue with the IBLA, and the argument you're now making, it seems to me, is equally applicable to that case, but the government never, in fact, neither party ever raised the question of jurisdiction. What am I to make of that? Well, I think the government did in the CSB in that case raise the issue of jurisdiction, but the reason I think it's not in the exact same posture as here and not as particularly as clear as this case is, is that they had broader claims about impossibility of performance of the contract that were based on Louisiana state law that this court rejected and said, no, this is a federal law question and federal law applies to it. Isn't the better answer, Counsel, that it was not an appeal from the IBLA? And that's the other, yes. And the only thing you could have argued was that IBLA decisions should have been considered binding regardless of whether it was an actual appeal from the IBLA. Right. The connection here is clear that this is seeking review of the IBLA decision, and so that goes then directly to adequate remedy, and it's clearer here than there. The district court here, it's one rationale for granting the transfer motion was that the fact that the CFC dismissed on a non-jurisdictional theory means that it must have ruled that it had jurisdiction. But as we cite in our brief that this court's decision, National Cable Television Association and many others, it's clear that you can't treat as precedential something a court hasn't said. So here there was no statement about that issue, and there's nothing precedential in that opinion or in this court's September opinion except for the fact that this court makes it very clear that the IBLA decision is controlling absent APA reversal in the district court. And so that's the avenue here Taylor Energy should be pursuing, and this case should be remanded to them to do so. I haven't mentioned Bowen v. Massachusetts. That's our alternative ground for reversal here. We think adequate remedy is easier and more direct. But in any event, this isn't a pure monetary damages case, but they're seeking the return of specific monies from their lease-specific abandonment account, and the parties have as complex an ongoing relationship as one can imagine between the federal government and the private party. Do we need to get into Bowen? I mean, Bowen is kind of a controversial case, and it's also very confusing. Right. I agree with that. No, you do not need to get into Bowen. I just wanted to mention it in case there are any questions for me about it. But I think you don't need to get into it. I think that adequate remedy here is easier and largely answered by the September 2020 decision. Right. And, you know, even the statute says that there's only one court that has jurisdiction over these IBLO appeals, right? Well, that's what we think the effect of the APA is 704 says if there's no adequate remedy, then the APA district court proceeding is the only option. Okay. So unless the court has further questions, I will be back in rebuttal and answer the panel's question about the timing of the transmission. I think I found it in the record. Never mind. Okay. It was pending for about a year. Okay. Okay. Thank you. Mr. Rosenwald. Thank you, Your Honors. Your Honors, the issue here is straightforward and incredibly narrow. It's simply whether Taylor Energy's contract claims that seek specific monetary relief should be before the Court of Federal Claims. We would suggest both the Griffin expiration case, the suburban mortgage case, the Mitchell case. Mr. Rosenblum, it's all very interesting. You're actually arguing the earlier case. Let's deal with this case. Let me call your attention. This is Judge Plager. Let me call your attention to page two of your brief, right? And on page two, you say, Taylor Energy kindly appealed Interior's decisions to the Interior Board of Land Appeals, IBLA Appendix 12. Both decisions were subsequently affirmed by the IBLA relying upon contract construction principles in adjudicating contract disputes. Taylor Energy then filed this action in the United States District Court for the Eastern District of Louisiana against Interior and BOEM, referred to as the Federal Seeking Judicial Review of the IBLA decision under the Administrative Procedure Act. Is that your brief that I'm reading from? Yes, Your Honor. It certainly is. And I agree with you entirely. This case is simple and straightforward. You are seeking judicial review of the IBLA decision under the Administrative Procedure Act. Why are you talking about contract law? Your Honor, at the time that proceeding was filed, in December of 2018, neither Judge Firestone in the CDC nor this Court's affirmance had decided the issue of subject matter jurisdiction. In fact, in front of Judge Firestone, the government raised in that case, Judge Plager, three issues. One was the statute of limitations, one was the primary jurisdiction, and one was a monetary mandating issue. So that the 12B1 motion that was filed in front of Judge Firestone did address a subject matter jurisdiction issue between the Tucker Act and the APA. And Judge Firestone obviously found that she had subject matter jurisdiction under the Tucker Act and granted the 12B6 motion. This Court, with Judge O'Malley, affirmed Judge Firestone's decision, finding subject matter jurisdiction. It's very important, Judge Plager, to recognize that at the time that lawsuit was filed, we had not yet had the guidance. And as you recognize, Judge, in the suburban mortgage case, the line between Tucker Act jurisdiction and APA jurisdiction and whether the limitations in 702 and 704 apply is not always clear.  Counsel, it was clear before the Supreme Court's decision in Bowen, and since you have been kind enough to remember suburban mortgage, I've pointed out in suburban mortgage that the way to look at these cases is to ask not where the money is or what the money is, but to simply ask what court has subject matter jurisdiction under the law. Now, in the previous Taylor Energy Company case, the September 3rd case, that is not precedent. That is not precedent on anything in this current case. The reason it's not precedent on anything in this current case was the question of jurisdiction was never raised by either party so that the court had no reason to get itself into it. What the court decided was a contract issue. Was it a state contract or a federal contract? That case provides no precedent for this case because on page two of your very own brief, you say you're seeking judicial review of the IBLA decision under the Administrative Procedure Act. That statute is totally controlling. I pointed that out in suburban, and I don't think there's any real question about it, is there? Judge Plager, let me address your question this way. At the same time, Your Honor, that we filed that case in the Eastern District of Louisiana, we filed a case in the Court of Federal Claims because we were unclear... I'm sorry? Yeah, go ahead. Because we were unclear as to whether or not the issue that had been teed up in front of the Court of Federal Claims in front of Judge Firestone on a 12B1 issue, how that issue was going to work out. This case coming out of a different IBLA decision, recognizing that this case comes out of a decision that specifically talks about contract principles and specific provisions dealing with insurance offset and rate downtime, which as opposing counsel recognized, the IBLA decision that was referred to in the Firestone opinion and as affirmed by this court by Judge O'Malley, that dealt with a regulatory departure. Wait, wait, wait, counsel, counsel, counsel. In the prior case, you did not appeal the IBLA decision. So this precise issue was not before the court, and the only argument that the government could have made and should have made was that even if you didn't appeal the IBLA decision, that IBLA decision was binding on both the Court of Federal Claims and on us, and at least as to any issues that were covered in the IBLA that would have been true. So this is a totally different circumstance. We did not rule and say that the Court of Federal Claims would have jurisdiction over an IBLA appeal. We couldn't have said that. Judge, I agree with you. This is a very different case on the merits, but in terms of jurisdiction, since that IBLA opinion that dealt with a regulatory departure, as you point out, was not appealed, that was not before Judge Firestone. But what we have here, Your Honor, is a situation where you look at what the IBLA did, and we would suggest under 702 and 704 of the Administrative Procedure Act and those limitations, there is not a special rule dealing with final agency actions coming out of the IBLA. They treat all administrative agency actions the same under that. We would also point out that both the Griffin expiration case, and I understand it's coming out of the Federal Fifth Circuit, the Amico case, both of those cases did deal with IBLA decisions. So the suggestion, with all respect, Your Honor, that this Court or the Court of Federal Claims has to blindly accept what the IBLA does, it really depends as to what is the issue before the IBLA. If it deals with a contract issue, which is what we're talking about here, then you look at, as between the APA and the Tucker Act, with the limitations to 702 and 704, and Judge Plager, your suburban mortgage opinion helped me crystallize the issue after reading both, that when you look at the underlying claims and the suggestion that Taylor Energy is seeking more than what the courts have called a naked monetary judgment in this case, is simply not true. If you look at paragraphs 9, 38, and more importantly, I guess the wherefore clause in the proposed amended complaint, we specifically ask for monetary damages. It is very narrow. It's not a long-term change. But why would you want to be in a court that is bound on the merits by what the IBLA decision says? Yeah, let's pursue that exact question, counsel. All right, let me respond this way. Let me give you a hypothetical. The hypothetical is Judge Plager is now on the CFC, and you are before me in your case, and you say you want money back, right? And I say to you, well, wait a minute, wasn't there a decision by an agency that decided that very question, and is that not before me? And what's your answer to that? The IBLA decision that addressed that specific issue relied itself, in the opinion, on contract construction principles. When it did that, recognizing that the narrow relief that was sought in that proceeding, that I would suggest to you that the Court of Federal Claims, number one, not only has proper Tucker Act jurisdiction, but number two, must look at the underlying substance of the claim. You pointed that out in suburban mortgage. You got to look at exactly what is being sought in the complaint. In the complaint, we are seeking, in this case, very targeted, specific relief coming out of what we suggest, on the merits, Judge, is the IBLA's improper interpretation. But that's really for the merits, and the Griffin case indicated that those bootstrap issues, from my perspective, Your Honor, is really a merits issue. We will point out, when we're in front of the Court of Federal Claims, why it is that the IBLA decision dealing with this issue, on contract issues, does not need to be blindly followed by the Court of Federal Claims. Now, I'm not sure, Your Honor, if it was Judge O'Malley or Judge Post, because I wear hearing aids, but I would like to respond to the question of why would I want to be back in front of the Court of Federal Claims, since I already had an unhappy result there. The answer is very simply, this dispute needs to be in front of a court that has proper subject matter jurisdiction. If we do it in the Eastern District down here, particularly with the Amoco opinion, and now, with the other decision of this case, recognizing, I understand, Your Honor's point is, that Judge Firestone and, in the other opinion, a different panel of this Court, didn't specifically go to subject matter jurisdiction. But we would suggest, under the SINOCAM case, and a number of Supreme Court cases, in order to get to a 12B6 issue, you have to already recognize that there is subject matter jurisdiction. We would suggest, by the way, Your Honor, even if you didn't have that prior case, when you look at the limitations in the APA under 702 and 704, and you look at what the claim is here, you look at what the IBLA did in this decision based upon contract construction principles, we would suggest that the other case may be a closer question. This case, with the IBLA's contract construction principles, clear as a bell. And remember, we have two IBLA decisions, one day apart, written by the same IBLA judge. One dealt with a regulatory departure issue, which we would suggest is an APA issue. But this case, dealing with contract construction principles, with the insurance offset provision, with the rigged downtime provision, provisions that are not reliant upon any regulatory scheme, it's a much narrower, more targeted case, which is why here, Taylor Energy certainly wants to make sure, wherever it has its day in court, Your Honor, it has its day in a court that has proper subject matter jurisdiction. I'm not sure exactly how... Mr. Rosenboom, I have one more question for you. What would you expect this court to do if you were able to get before the Court of Federal Claims, and the Court of Federal Claims on contract principles, held for you, and ruled that the IBLA decision was erroneous, and that on those contracts, you are correct? What would you think we would have to do in that case? Assuming the government would appeal. Yep. Judge Flager, I'm not clear. Are you asking what would you have to do on the jurisdictional issue? Yeah. On the jurisdictional issue, we would suggest it would be very simple. You look at 702.704, and we believe the adequate remedy, we're seeking a very targeted remedy here. The complaint, as proposed to be amended, is seeking monetary damages. It, therefore, takes it out of APA jurisdiction, and there is clear Tucker Act jurisdiction, and as I think you pointed out in Suburban Mortgage, sometimes there is an overlap between the two statutes, but the Tucker Act says that it is exclusive. So if there is an overlap with the legal test for jurisdiction, the Tucker Act prevails, and Congress obviously passed the Tucker Act to make sure that the Court of Federal Claims can address all of these types of contract disputes between private litigants and the government. When you look at the IBLA decision that is at issue in this case, not the one in the other case that dealt with regulatory issues, but in this case, when you see that the IBLA itself relied upon contract construction principles, we would suggest this Court clearly would have jurisdiction to affirm Taylor Energy prevailing at the Court of Federal Claims, Judge Plager. And I think I heard my time is up. Thank you. Thank you very much. Mr. Lundman? Yes, so three points. First, in response to Judge O'Malley's question on timing, just really briefly, it was about a year. In the meantime, in the middle of that time, the case was reassigned from one district court judge to another, which may explain slightly the delay. Second, about the IBLA decision, it's the same issue that they're seeking judicial review for here. And if you look at their proposed amendment complaint that Taylor Energy cited in Appendix 329, it's not just money damages. I'm quoting, So, it's still seeking the same relief. Can you address the Amoco case? Sure. Amoco does not say anything about adequate remedy. So, to the extent the Court thinks that's the right way to resolve this case, then there's nothing in Amoco on adequate remedy, and that alone means it doesn't walk into the room with care. Your point that the Amoco decision was wrongly decided because it didn't address that question? Well, it's an older case that predates Bowen and this Court's subsequent cases applying and interpreting Bowen. So, I'm not sure it got it wrong. It was working in a different era, I guess, of deciding when a case fits under the APA and the Tucker Act. The second major distinction is that case concerned under OCFLA a money-mandating duty, so payments of royalties. It wasn't a regulatory duty, and that's what we have here is a decommissioning obligation that underlines Taylor's duties here. And that's the other point I wanted to mention about the IVLA decision and Interior's decisions here. It's not just contractual wrong. It is in the context of Taylor's obligation to decommission this site. And the decommissioning obligation then, as applied through these agreements, ensures that funds are available over time to make sure that all the decommissioning takes place. So, it's a regulatory requirement, not just a money-mandating duty. And that's the same issue with Griffin that opposing counsel mentioned. Again, nothing about adequate remedy there. And that case makes clear as well that there is no conflict between the breach-of-conflict claim and the IVLA decision. While here, the breach-of-contract claim is essentially the IVLA error that got it wrong, and so it really is an APA district court claim rather than a Tucker Act claim. Mr. Lundman, a quick question for you. Is it your view that if this case was before the district court under the APA and the question was initially, what about the IVLA decision? Let's assume the district court overturns the IVLA decision for whatever reasons. Is the district court empowered under the APA to render a money judgment as a result of that case? I think the district court's remedies would be to set aside and reverse the IVLA decision, and then it has its injunctive authority to order the agency to take action that's consistent with the law. And that action, Judge Crouse, that action would be dispersing the funds. It could order that. Now, I don't want to say that's the default remedy. If it's a procedural error or an error that can be fixed and remanded by the agency, well, then the agency should, under the APA, has the chance to fix that. But let's say that it's possible. Mr. Lundman, the question is, could under appropriate circumstances the district court make a money award? Under appropriate circumstances, I think the best answer I could give is that the district court could order the agency to disperse the exact funds in the amount Taylor is seeking. Okay. Yes. Thank you. It couldn't award damages out of the U.S. Treasury. But that's not what Taylor's asking for in its complaints here. So unless the court has anything further, we ask that you reverse. Anything further, colleagues? Hearing none, thank you. We thank both counsel and the cases submitted. Thank you. The honorable court is adjourned from day today.